Jared Allebest (13485)
**ALLEBEST LAW GROUP**
8978 Quarry Stone Way
Sandy, Utah  84094
Telephone:  801-214-0521
Fax:  949-454-2550
jared@allebest.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **AARON MICHAEL HEINEMAN, ELIZA MACINTOSH STAUFFER, THE UTAH ASSOCIATION FOR THE DEAF and ROES I-X**<br><br><br>Plaintiffs,<br><br>vs.<br><br>**LT. GOVERNER SPENCER J. COX, in his Official capacity as Lieutenant Governor of Utah, LIEUTENTANT GOVERNOR'S OFFICE, a political subdivision of the State of Utah, JAMES EVANS, an Individual, CRAIG FRANK, an individual, UTAH REPUBLICAN PARTY, a Utah political organization, UTAH COUNTY REPUBLICAN PARTY, a Utah Political Organization and ROES I-X.**<br><br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br><br><br><br><br><br><br><br>Civil No.:  2:18-cv-00349-BSJ<br><br>Judge:  Judge Bruce S. Jenkins |

# TABLE OF CONTENTS

RELIEF SOUGHT…………………………………………………………………...1

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS…………………………...2

    INTRODUCTION………………………………………………………………...2

    BACKGROUND FACTS……………………………………………………….....3

    ARGUMENT……………………………………………………………………8

        I.       PLAINTIFFS' PLEADINGS ARE SUFFICIENT TO ALLOW THE INSTANT MATTER TO GO FORWARD...…………….......................8

        II.      THE UTAH LIEUTENANT GOVERNOR'S OFFICE, THE UTAH REPUBLICAN PARTY, AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE FOR VIOLATIONS OF TITLE II AND THE REHABILITATION ACT......................................................................10

        III.    THE UTAH REPUBLICAN PARTY AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT...........................................16

        IV.    THE UTAH LIEUTENANT GOVERNOR'S OFFICE, THE UTAH REPUBLICAN PARTY, AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE FOR VIOLATIONS OF § 1983.........................18

        V.     LIEUTENANT GOVERNOR SPENCER J. COX AND THE UTAH LIEUTENANT GOVERNOR'S OFFICE ARE NOT ENTITLED TO 11TH AMEDNMENT IMMUNITY.......................................................20

CONCLUSION.............................................................................................................25

Plaintiffs, by and through their Counsel of Record, oppose State Defendants' Motion to Dismiss as follows:

## **RELIEF SOUGHT**

State Defendants' arguments fail under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   The Court holds subject matter jurisdiction.   Plaintiffs' Pleadings are sufficient pursuant to Federal Rule of Civil Procedure 8(a) and case law.

The conduct of all the Defendants is prohibited by Sections II or III of the Americans with Disabilities Act and none of the Defendants are immune from any of the provisions of the aforementioned sections of the Americans with Disabilities Act.

None of the Defendants actions in the instant matter are immune from the provisions of §1983.

None of the Defendants are entitled to 11th Amendment Immunity under the facts of the Instant Matter.

Plaintiffs respectfully request that the Court deny the State Defendants' Motion to Dismiss and allow the instant matter to proceed normally pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Discovery.  Plaintiffs respectfully request that oral argument be scheduled before the Court regarding State Defendants' Motion to Dismiss.

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

### INTRODUCTION

The Lieutenant Governor's Office is a political subdivision of the State of Utah. It is jointly and severally (including various agencies and divisions), classified as "public entities" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 35.104.  A public entity means "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. § 35.104(1)-(2). The Lieutenant Governor's Office is a public entity that falls under the ADA Title II ("Title II").  The Lieutenant Governor's Office, (including its various agencies, divisions and instrumentalities) are obligated to ensure that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

The Defendants, the State of Utah, through the Lieutenant Governor's Office, the Utah Republican Party and the Utah County Republican Party failed to establish within their agencies and divisions policies, practices, and procedures required under the Americans with Disabilities Act, Section 504, Section 1 of the Fourteenth Amendment, and the First Amendment to ensure that individuals with a disability are not subjected to discrimination. If such policies do exist, the State Defendants (including all various agencies and divisions) failed to ensure that its agents are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over

2

their respective programs and/or personnel tend to exclude and segregate individuals with disabilities from the benefits of public programs or services.

The contention of Plaintiffs that Lieutenant Governor's Office ("State Defendants") failed to establish within their agencies and divisions, policies, practices, and procedures required under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, to ensure that individuals with a disability are not subjected to discrimination is entirely plausible pursuant to the material currently before the Court. If such policies do exist, the Defendants (including all various agencies, divisions and instrumentalities) failed to ensure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate individuals with a disability from the benefits of public programs or services.  These contentions are supported by the facts contained in the Complaint (as well as the Supplemental Brief filed with the Complaint) and the pleadings are adequate for the Court to allow this case to proceed pursuant to the Federal Rules of Civil Procedure and Case Law.  Based on the foregoing, the Court should order the parties to engage in the discovery process so that the level of culpability of each of the Defendants can be determined by the Court.

## BACKGROUND FACTS

1.     Eliza McIntosh Stauffer attended her local caucus meeting on Tuesday, March 22, 2016, at the Salt Palace Convention Center. Mrs. Stauffer was duly elected as a state Republican delegate to represent Precinct 128. After being elected as a state delegate for Precinct 128, Mrs.

Stauffer studied the issues, personally called and questioned her candidates, talked with the public, and fulfilled her due diligence to be the best representative possible.

2.      She attended the April 23, 2016 URP State Convention as a state delegate for Precinct 128. She went to the convention room early, concerned that she wouldn't be able to find a seat other than the one she wheeled in. There were no designated seating areas for individuals with a disability. Thankfully, members of her district saw what was going on and helped her find a seat in the first row of the back section.

3.      During the URP State Convention, Mr. Evans presented proposed resolutions for approval by voice vote. One resolution, calling for the nullification of federal overreach, was too close to call.  Mr. Evans called for the issue to be resolved by a "stand-up" vote. Such votes are allowed per party bylaws under Section "M" of the proposed rules of the URP 2016 State Nominating Convention Rules. (See Attachment #2 of Complaint).

4.      Several delegates, including Mrs. Stauffer, objected because they were unable to stand. Despite a vocal request for a reasonable accommodation by an elderly delegate to decide the vote via the use of "clickers", which had been previously utilized, Mr. Evans insisted on the stand-up vote.  The elderly delegate was the lone objector, which caused some people to murmur in objection, but Mr. Evans acted rapidly and shut down this matter before other delegates could join the elderly delegate. This decision led to the disenfranchisement of all delegates with disabilities who were unable to stand. Elderly delegates and injured veterans who were unable to stand were prevented from voting.

5.      Afterwards, Mrs. Stauffer attempted to resolve this matter by attempting to speak

with Mr. Evans.  She organized a rally in front of the state Republican Party headquarters in downtown Salt Lake City. On Friday, May 27, 2016, members of the Disabled Rights Action Committee (DRAC), precinct members, and citizens with a disability joined together in protest at the Republican state headquarters to protest Mr. Evan's decision. (See Attachment #3 of Complaint). About 60 people cycled through the protest to show support for Mrs. Stauffer. Most of these protesters did not have a disability. Despite constant efforts to contact the URP, they remained silent. The chairman refused to meet with the protesters to address the issue until an apology was given by the protesters for exercising their First Amendment right to protest.  At the conclusion of the protest, Mrs. Stauffer went into an office with URP executive director Bryan Smith to call Mr. Evans and schedule an appointment. She soon exited the room in tears. Mr. Evans refused to speak with her on the matter.

6.      On February 18, 2016, Aaron Heineman pre-registered online to attend the local caucus meeting scheduled to take place on Tuesday, March 22, 2016. (See Attachment #4 of Complaint).

7.      Mr. Heineman called the Utah State Republican Party, via VRS, and spoke to Matt Tueller regarding his need for an ASL interpreter at the March 22, 2016 event.   Mr. Tueller promised to arrange an ASL Interpreter, and told Mr. Heineman of her promise.  (See Attachment #8 of Complaint).

8.      Shortly thereafter, Mr. Heineman contacted the URP via VRS. Mr. Heineman then called Interwest and notified them about the arrangement. (See Attachment #9 of Complaint).

9.     The following day Kevin Brady from the UCRP attempted to contact Mr. Heineman at 12:24 p.m. and left a message stating, "This is Kevin Brady with Utah County Party. We are looking to find out what requirements they need for hearing impaired tonight at the meeting." Mr. Brady left his phone number and hung up. (See Attachment #10 of Complaint).

10.     A few hours later, Mr. Heineman attempted to return Mr. Brady's call via VRS, but got a voicemail. He left a message. He then hung up and called again. This time Mr. Brady picked up the call. Mr. Heineman requested an ASL interpreter for the meeting. Mr. Brady told Mr. Heineman that "I spoke with the precinct chair for Provo 43 and she is searching for an interpreter for you for the caucus meeting tonight." (See Attachment #11 of Complaint).

11.     A few minutes after speaking with Mr. Brady at the UCRP, Mr. Heineman contacted Interwest to notify them of the promises he received and to see if there was any development on the arrangement for an interpreter to be present at the local caucus. (See Attachment #12 of Complaint).

12.     After ending his call with Interwest, Mr. Heineman attempted to contact Mr. Tueller again at the Utah State Republican Party office. He was unable to speak with Mr. Tueller because calls were routed to a recorded message on the day that the caucuses were being held across the state of Utah. (See Attachment #13 of Complaint).

13.     On Tuesday, March 22, at or around 4:30 p.m., a representative from the UCRP again called Interwest and requested that they schedule interpreting services to begin at 7 p.m. for the caucus meeting. Later, at or around 5:30 p.m., the representative called Interwest and cancelled the request.

14. Ms. Jensen sent an email to Mr. Heineman at 6:15 p.m., informing him that "Kevin from the UCRP contacted me this afternoon to talk about scheduling interpreters for tonight. We had interpreters ready to send, but then Kevin told me that the precinct chair and someone else had arranged for interpreters so he told us never mind. I'm not sure who will be there tonight. I also don't know if they will be certified or not, but supposedly there will be someone there to help." (See Attachment #15 of Complaint).

15. On the evening of March 22, 2016, Mr. Heineman went to his local caucus location, arriving at 7 p.m. Unfortunately, he discovered that his request for a qualified and certified ASL interpreter had gone unfulfilled. Another attendee, Andy Smith, offered to interpret for Mr. Heineman in lieu of a qualified and certified ASL interpreter. Mr. Smith has rather rudimentary ASL skills and is not qualified to interpret for a Deaf individual. Mr. Smith also offered to assist Mr. Heineman when he gave his speech running as a state delegate. They passed notes to one another to communicate. (See Attachment #17 of Complaint).

16. As the meeting progressed during the evening, those in attendance at this particular caucus meeting voted to allow each delegate to give a two-minute speech in accordance with the 2016 Utah State Republican Party Neighborhood Caucus Election Rules under the heading "Elections." (See Attachment #19 of Complaint). Mr. Heineman had difficulties giving his speech, since the requested ASL interpreter was not present at the meeting. Mr. Heineman began his speech with Mr. Smith attempting to interpret for him. Mr. Heineman was interrupted half way through his speech and was told that his two minutes were up. Without a qualified and certified ASL interpreter providing adequate services, he had no way of

accurately tracking the timing of his speech. (See Attachment #20 of Complaint).

17.     The individuals in this particular room for the caucus subsequently voted. Mr. Heineman did not win. However, someone in the audience nominated him to run for the county delegate slot against several announced candidates. This time, each candidate was given one minute to give a speech as to why they should be elected to this position. Once again and with great difficulty, Mr. Heineman attempted to give a new speech without a qualified and certified ASL interpreter present. He also had difficulty voting; he could not follow what was being said during the voting process due to the fact that a certified and qualified ASL interpreter was not present. Mr. Heineman was not elected to this position. Ben Summerhalder was chosen as State delegate and two women were elected as County delegates out of several nominated candidates including Mr. Heineman. (See Attachment #21 of Complaint).

## ARGUMENT

### I.     PLAINTIFFS' PLEADINGS ARE SUFFICIENT TO ALLOW THE INSTANT MATTER TO GO FORWARD.

Pleadings before this or any other federal court do not require the precision that the State Defendants seek in the instant Motion.  The facts currently before the Court by way of Plaintiffs' Complaint indicate that all of the Defendants (including the State Defendants) acted together to deny Plaintiffs their rights due to them under federal law.  State Defendants' assertion that there are insufficient facts plead to hold them liable under federal law is simply not accurate.  On their face, State Defendants seem to be asking the Court to simply ignore Federal Rule of Civil

Procedure 8(a) and ask the Court to adopt a pleading standard of precision that does not exist under the Federal Rules of Civil Procedure or federal case law.

State Defendants seek, in essence, for Plaintiffs to lay out a prima facie case in their Complaint. This level of precision is not required at the pleading stage of any civil litigation. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face . . ." [1] As can be plainly seen in the arguments below, the facts combined with the causes of actions before the Court give the Court more than enough allegations of fact to allow this case to move forward and deny State Defendants' Motion. "In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements . . ." [2] Further, ". . . [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."[3]

The precision that State Defendants seek is clearly not the pleading standard by which this Court is bound. Based on the facts presented in the complaint, the courtesy brief provided earlier in the litigation, and the facts in this Memorandum in Opposition, it is abundantly clear that Plaintiffs are not simply placing bald legal conclusions before the Court. The causes of actions listed are supported by the substantial and detailed facts currently before the Court and

---

[1] *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir, 2012) citing *Bell Atlantic Corp v. Twombly*, 550 U.S. at 570 (2007) (internal quotation marks omitted).

[2] *Id.* citing *Ashcroft v. Iqbal,* 129 S.Ct. at 1950 (2009).

[3] *Id,* citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

the Court is obligated to accept the contents contained in Plaintiff's Complaint as true.  Based on the detail given alone, the Rule 12(b)(6) portion of the State Defendants' Motion to Dismiss should fail.   However, given that the State Defendants' have opened the door, further parts of the complaint further strengthen Plaintiffs' position that State Defendants' Motion should be dismissed.   The following materials contain a more detailed explanation of how the facts presented work in conjunction with the causes of action which makes the contents of the Complaint entirely plausible under the *Twombly* standard.   Further, these materials will show why State Defendants' Motion should fail pursuant to Federal Rule of Civil Procedure 12(b)(1) due to the Court holding subject matter jurisdiction in the instant matter.

## II.   THE UTAH LIEUTENANT GOVERNOR'S OFFICE, THE UTAH REPUBLICAN PARTY, AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE FOR VIOLATIONS OF TITLE II AND THE REHABILITATION ACT.

In *Melton v. Orange County Democratic Party*,[4] the Court noted that the "issue of whether a local or state political party is a public entity as defined by the ADA is one of first impression. Neither the Fourth Circuit nor the Supreme Court have directly addressed the issue. In fact, this Court has not found any federal or state case directly addressing the issue."[5] It noted that "the United States Department of Justice has provided administrative materials addressing the meaning of the term public entity under the ADA"[6] and saw that "the regulations issued by the Justice Department simply restate the definition of public entity found in the statute. 28

---

[4] 304 F. Supp. 2d 785 (M.D.N.C.), aff'd, 111 F. App'x 707 (4th Cir. 2004).

[5] *Id.* at 786.

[6] *Id.* at 787.

C.F.R. § 36.104. However, the Technical Assistance Manual that the Justice Department, Civil Rights Division issued pursuant to 42 U.S.C. § 12206 provides a more detailed explanation. The manual explains that, as a general rule, Title II is intended to apply to all programs, activities, and services provided or operated by State and local governments. The manual goes on to list four factors that may be used in determining whether an organization is a public entity: (1) Whether the entity is operated with public funds; (2) Whether the entity's employees are considered government employees; (3) Whether the entity receives significant assistance from the government by provision of property or equipment; and (4) Whether the entity is governed by an independent board selected by members of a private organization or a board elected by the voters or appointed by elected officials."[7]

On the surface, it appears that political parties are not a public entity as defined by Title II. However, there is a "long history of Supreme Court cases treating political parties as state actors where the parties have blocked access to ballots because of invidious racial discrimination."[8] In that line of cases, the Constitution "does not bar intervention into party practices where necessary to prevent derogation of civil rights."[9]

The *Melton* Court distinguished their case from a line of cases where a political party sought to exclude African Americans from participating in political activity because "while it is true that political parties may not violate the United States Constitution, and may be deemed

_____

[7] *Id.*
[8] *Id.* at 788.
[9] *Id.*

state actors for those purposes, the line of cases cited by amicus are inapplicable to the issue in this case. The narrow issue in this case hinges on the statutory interpretation of the ADA, and its application to the OCDP. Therefore, examination of the state action line of cases cited by amicus is unnecessary."[10]  In the Supreme Court case, *California Democratic Party v. Jones,*[11] Judge Scalia noted that *Smith v. Allwright*[12] and *Terry v. Adams*[13] "held only that, when a State prescribes an election process that gives a special role to political parties, it "endorses, adopts and enforces the discrimination against Negroes" that the parties (or, in the case of the *Jaybird Democratic Association*, organizations that are "part and parcel" of the parties, see *id.*, at 482, 73 S. Ct. 809 (Clark, J., concurring)) bring into the process—so that the parties' discriminatory action becomes state action under the Fifteenth Amendment."[14]

While the aforementioned case law deals with racial discrimination, the facts and principles contained in the cases apply directly to the facts of the instant matter as the actors in the cases mentioned prior and the facts of the instant case involve egregious discrimination by political parties acting as state actors.  In spite of State Defendants' contention that there is no possible way that the State Defendants' can be held liable, it is clear that the Utah Republican Party and the Utah County Republican Party are state actors.  Acting as agents of the State of Utah, they denied Plaintiffs their Federal Statutory and Constitutional rights in a way that is

---

[10] *Id.*
[11] 530 U.S. 567, 573–74, 120 S. Ct. 2402, 147 L. Ed. 2d 502 (2000).
[12] 321 U.S. 649, 64 S. Ct. 757, 88 L. Ed. 987 (1944).
[13] 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953).
[14] *Jones* at 573.

parallel to the facts on the aforementioned cases.  None of the parties acted in a vacuum, however, their combined actions, and the actions of their agents, are what brought the facts before this Court in the instant matter.

The 10th Circuit Court of Appeals in *Gallagher* stated that "under the nexus test, a plaintiff must demonstrate that "there is a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself."[15] Under this approach, a state normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[16] "The test ensures that the state will be held liable for constitutional violations only if it is responsible for the specific conduct of which the plaintiff complains.*"[17]

The Supreme Court has stated that political parties cannot engage in racial discrimination in a primary and general election since there is a nexus between the state and a political party due to the fact that political parties function "as a part of the state's electoral machinery."[18]  The URP, or any political party within the State of Utah, functions as a part of Utah's electoral

---

[15] *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1448 (10th Cir. 1995). citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S. Ct. 449, 452-53, 42 L. Ed. 2d 477 (1974).

[16] *Id.* citing *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S. Ct. 2777, 2785-86, 73 L. Ed. 2d 534 (1982).

[17] *Id.*

[18] *Terry v. Adams*, 345 U.S. 461, 481 (1953).

[18] *Id.* at 481.

machinery during Utah's primary and general elections.  Utah has proscribed how the URP will operate as part of the state's electoral machinery since they are (1) required to form and operate under Utah Election Code 20A-8-101, (2) the URP operates in Utah as an unincorporated association registered under Title 20A, chapter 8 of the Utah Code[19] and, (3) that the URP "is a registered political party, as defined by Utah law predating the passage of SB54."[20]

Within the Utah Lieutenant Governor's Office exists the Utah Lieutenant Governor's Election Office, where the state governs all political activities relating to elections, voting, filing for candidacy, campaign finance, lobbying, and forming political organizations such as a political party, Political Action Committee (PAC) or Political Issues Committees (PIC) within the state of Utah. Specifically, it provides information on how to register as a federal Candidate, state Candidate or a political party. Federal Candidates file in person with the Lieutenant Governor's Office and submit various forms to the Lieutenant Governor's Office to declare candidacy with that office. Moreover, they provide information about current initiatives and how to conduct a statewide initiative within the state of Utah. It also contains the Voting Equipment Selection Committee. Finally, it posts the election results online and provides information on where people can go to meet with their affiliated political party on Caucus night.

The URP receives assistance from the government when the State of Utah allows the Defendants (and other political parties) to hold caucuses at places of public accommodation

---

[19] *Utah Republican Party v. Herbert, et al.,* at 1344, Case No. 2:14–cv–876 (D. Utah). Internal quotations and citations omitted.
[20] *Id.* at 1345.

(public schools, libraries, etc.). It also receives government assistance when the State of Utah

publishes the locations of where people can meet on caucus night on the website

https://vote.utah.gov.    The Utah Lieutenant Governors Elections Office has a presence on

Twitter. "Vote Utah" is the "Official Account for Utah State Elections; Office of the Utah

Lieutenant Governor, Spencer J. Cox." It uses the handle @ElectionsUtah. The URP receives

government assistance when the State of Utah publishes tweets reminding people to attend their

local caucus, provide the locations of where people can meet on caucus night, and to encourage

people to attend the statewide convention for the political party that they affiliate with and/or

support.  The URP also receives assistance from the State of Utah when it holds its nominating

conventions, because the State of Utah provides security and law enforcement to protect elected

officials who come to the convention.

Plaintiffs assert that there is a synergy between all of the actors and that the action,

inaction, and blatant disability discrimination by all of the Defendants, including the State

Defendants, led to the facts currently before the Court in the instant matter.  The attempts by the

State Defendants to distance themselves from the State Actors that they control are not plausible.

Appellate courts across the United States have held time and again that when States provide an

election process that gives a special role to political parties, it adopts the discrimination of the

state actor (the political party).  Simply put, there is a sufficient nexus between the State

Defendants and the other Defendants that make the actions of the State Actors the actions of the

State Defendants themselves.  Based on the foregoing, the Utah Office of the Lieutenant

Governor, the Utah Republican Party, and the Utah County Republican Party are liable under Title II of the Americans with Disabilities Act and the Rehabilitation Act.

### III.   THE UTAH REPUBLICAN PARTY AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT.

As established firmly above, the Utah Republican Party and the Utah County Republican Party are agents of the State of Utah when they hold primary or general elections.  Given the public-private relationship between the State of Utah and the URP within the context of a political party which holds primaries and state conventions to select their nominee in the general election are state actors, it strongly indicates that both Title II and Title III are at play here.

Title III applies to public accommodations, commercial facilities or any "private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes"[21] and clearly states that it does not "apply to any private club (except to the extent that the facilities of the private club are made available to customers or patrons of a place of public accommodation), or to any religious entity or public entity."[22] A private club means a "private club or establishment exempted from coverage under Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a(e))."[23] A "private entity means a person or entity other than a public entity."[24] A review of case law reveals that many private, non-profit organizations have been denied exempt status

---

[21] 28 C.F.R. § 36.102(a)(1)-(3).
[22] 28 C.F.R. § 36.102(e).
[23] 28 C.F.R. §36.104.
[24] *Id.*

under the "private club" exemption to the ADA and the Civil Rights Act of 1964. See, e.g., *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677-78 (2001) (non-profit golf association's qualifying rounds and tours subject to Title III of the ADA); *Nesmith v. YMCA,* 397 F.2d 96, 101-02 (4th Cir. 1968) (YMCA not a private club under Title II of the Civil Rights Act despite status as non-profit corporation); *United States v. Lansdowne Swim Club,* 713 F. Supp. 785, 796 (E.D. Pa. 1989) (non-profit swim club was not a private club within the meaning of Title II of the Civil Rights Act).

Public accommodation means "a private entity that owns, leases (or leases to), or operates a place of public accommodation."[25] Title III defines a place of "public accommodations" to mean a "facility operated by a private entity whose operations affect commerce" and fall within at least one of the statutory categories.  Under Title III, a "facility" means "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."[26] Commercial facilities are defined as "facilities whose operations will affect commerce" and "that are intended for nonresidential use by a private entity."[27]  Because the discriminatory acts of the state actors took place in places of public accommodation, the Utah Republican Party and the Utah County Republican Party fall under the umbrella of Title III of the Americans with Disabilities Act.

---

[25] 28 C.F.R. § 36.104.
[26] 28 C.F.R. § 36.104.
[27] 28 C.F.R. § 36.104(1)-(2).

IV.    **LIEUTENANT    GOVERNOR    SPENCER    J.    COX,    THE    UTAH LIEUTENANT GOVERNOR'S OFFICE, THE UTAH REPUBLICAN PARTY, AND THE UTAH COUNTY REPUBLICAN PARTY ARE LIABLE FOR VIOLATIONS OF § 1983.**

The 10th Circuit Court of Appeals has explained that the "statute that provides a remedy for constitutional violations committed by state officials" is "42 U.S.C. § 1983."[28] Under that statute, "liability attaches only to conduct occurring "under color of law." Thus, the only proper defendants in a Section 1983 claim are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191, 109 S. Ct. 454, 462, 102 L. Ed. 2d 469 (1988) (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S. Ct. 473, 476, 5 L. Ed. 2d 492 (1961)).  Because of the nexus between the State Defendants and the discriminatory acts of the agents of the State (the Utah Republican Party and the Utah County Republican Party), the State Defendants are liable under §1983.

The State Defendants listed by the opposing party in the instant matter are not immune from the § 1983 provisions of the Complaint. " . . . when a suit against a state agent or officer is in tort for damages arising from the breach of a duty owed individually by such agent or officer directly to the injured party, the State is not the real party in interest-even though it could be held secondarily liable . . . under [the doctrine of] respondeat superior."  *Plaintiff May Sue State Employee in Supreme Court for Individual Tort Claim, Even if State Must Indemnify Employee,* St. John's Law Review: Vol. 62: Iss. 1, Article 11 (2012) citing *Morell v. Balasubramanian,* 514

---

[28] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995).

N.E.2d 1101 (N.Y. Ct. App. 1987) (internal quotation marks omitted).  The principles contained in *Morell* are directly applicable here and the Court can certainly apply them to the facts of the instant matter.  The Lieutenant Governor, in his official capacity as Utah's head election officer, holds a duty to Plaintiffs to ensure that policies and procedures were in place to prevent the discriminatory actions that took place.  The United States Supreme Court also allows suits against officials acting on behalf of state despite sovereign immunity assertions.  *Ex parte Young,* 209 U.S. 123 (1908).  The term "person" includes political parties, which places the Utah Republican Party and the Utah County Republican Party under the umbrella of § 1983.  *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989).  Further, Lieutenant Governor Spencer J. Cox does not have any hold any immunity in this case because he is being sued in his official capacity. *See Id.*   It is certainly plausible that the State Defendants listed in the opposing parties' pleadings can be found liable under § 1983 because all of the Defendants (each of them, including the individual persons listed) were acting under color of state law and the case can move forward to the discovery phase regarding those claims.

United States Supreme Court cases such as *California Democratic Party v. Jones*[29], *Smith v. Allwright*[30], *Terry v. Adams*[31], and *Nixon v. Condon*[32] have held that any political party who holds primaries and state conventions to select their nominee in the general election are state actors and cannot discriminate against a citizen because they are agents of the state. This holding

---

[29] 530 U.S. 567, 573–74, 120 S. Ct. 2402, 147 L. Ed. 2d 502 (2000).
[30] 321 U.S. 649, 64 S. Ct. 757, 88 L. Ed. 987 (1944).
[31] 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953).
[32] 286 U.S. 73, 88–89, 52 S. Ct. 484, 487, 76 L. Ed. 984 (1932).

applies to instances where political parties took steps to disenfranchise African-Americans from participating in their political activities, including denying them the right to vote in the primaries or general elections.  The holding in these cases is directly applicable to discriminatory conduct of all of the Defendants in the instant matter in that Utah political parties (agents of the State of Utah) have discriminated against individuals who are disabled by refusing to provide reasonable accommodations such as a request for an ASL interpreter provided by the URP to allow a Deaf individual to understand what is being said and which candidates are currently being voted on (which is the equivalent of a poll tax, which is a direct violation of the 24th Amendment), or when an individual in a wheelchair asks for an accommodation to a stand-up vote at the Utah Republican nominating convention.  All of the Title II claims have led to a direct denial of Plaintiff's right to vote and participate in the election process.  These are direct violations of the 14th Amendment and, because the culprits are state actors acting under color of state law, § 1983 applies to the facts of this case.

## V.   LIEUTENTANT GOVERNOR SPENCER J. COX AND THE UTAH LIEUTENANT GOVERNOR'S OFFICE ARE NOT ENTITLED TO 11TH AMEDNMENT IMMUNITY.

Under Title II of the Americans with Disabilities Act, a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a

violation in an action against any public or private entity other than a State." 28 C.F.R. § 35.178 "State Immunity."  State Defendants' assertions that they are immune from the actions of the State Actors completely fail to address the nexus between State Defendants and their agents (Utah Republican Party and Utah County Republican Party).

" . . . when a suit against a state agent or officer is in tort for damages arising from the breach of a duty owed individually by such agent or officer directly to the injured party, the State is not the real party in interest-even though it could be held secondarily liable . . . under [the doctrine of] respondeat superior." *Plaintiff May Sue State Employee in Supreme Court for Individual Tort Claim, Even if State Must Indemnify Employee,* St. John's Law Review: Vol. 62: Iss. 1, Article 11 (2012) citing *Morell v. Balasubramanian,* 514 N.E.2d 1101 (N.Y. Ct. App. 1987) (internal quotation marks omitted).  The principles contained in *Morell* are directly applicable here and the Court can certainly apply them to the facts of the instant matter.  The Lieutenant Governor, in his official capacity as Utah's head election officer, holds a duty to Plaintiffs to ensure that policies and procedures were in place to prevent the discriminatory actions that took place.  As stated previously, the United States Supreme Court also allows suits against officials acting on behalf of state despite sovereign immunity assertions.  *Ex parte Young,* 209 U.S. 123 (1908).  Further, Lieutenant Governor Spencer J. Cox does not have any hold any immunity in this case because he is being sued in his official capacity. *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989).   This denies the State Defendants 11th amendment immunity.

The majority in *Tennessee v. Lane*[33] clearly explained that the only constructional issue presented before the Supreme Court was "whether Congress had the power to enforce the constitutional right of access to the courts . . . "[34] and explained that their holding that Congress validly abrogated a state's Eleventh Amendment immunity under Title II of the ADA  was limited to the narrow "class of cases implicating the fundamental right of access to the courts."[35] It is important to note that the Supreme Court remained silent on whether Eleventh Amendment immunity was waived "as an undifferentiated whole" to all Title II claims that might be brought against a state government, from "public education and voting-booth access … to seating at state-owned hockey rinks . . . "[36]

While the majority in *Tennessee v. Lane* did not clarify the question of whether or not the Eleventh Amendment immunity was waived under Title II of the ADA in all other instances other than claims where fundamental right of access to courts has been denied, it must be assumed that Congress has waived the Eleventh Amendment immunity in this matter.  For example, in *United States v. Georgia*[37] the majority explained that when Congress enacted the ADA, they "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment...."[38] The Supreme Court in *United States v. Georgia* quoted the ADA as providing that "[a] State shall not be immune under the Eleventh Amendment to the Constitution

---

[33] 541 U.S. 509 (2004)
[34] *Id*. at 530
[35] *Id*. at 533–34.
[36] *Id*. at 530
[37] 546 U.S. 151 (2006)
[38] *Id.* 154 (2006) quoting 42 U.S.C. § 12101(b)(4)

of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."[39] The Georgia court explained that Title II "validly abrogates state sovereign immunity" only when there is "conduct that actually violates the Fourteenth Amendment."[40] However, the Supreme Court in *Georgia* doesn't say that their holding does not apply elsewhere, but that that Title II "validly abrogates state sovereign immunity" as applied to the Eighth Amendment.[41]   Here, all of the Defendants engaged in egregious violations of the Fourteenth Amendment by denying Plaintiffs equal protection under the law.  Hence, the State Defendants are not entitled to Eleventh Amendment immunity in this case.

Under *Gallagher*, State action can be found where the State "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity."  See also *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S. Ct. 856, 861-62, 6 L. Ed. 2d 45 (1961) and *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S. Ct. 1965, 1972-73, 32 L. Ed. 2d 627 (1972).  The test is based on the *Burton* Court's analysis, but it was christened in *Moose Lodge,* when the Court referred to "the symbiotic relationship between lessor and lessee that was present in *Burton.* 407 U.S. at 175, 92 S. Ct. at 1972." [42]  A symbiotic relationship has formed between the State of Utah and the URP to such a degree that the State of Utah has so far insinuated itself into a position of interdependence with the URP that it must be recognized as a joint participant in the challenged activity.

---

[39] *Id.* citing § 12202
[40] *Id.* at 159 (emphasis in original).
[41] *Id.*
[42] *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1452.

United States Supreme Court cases such as *California Democratic Party v. Jones*[43], *Smith v. Allwright*[44], *Terry v. Adams*[45], and *Nixon v. Condon*[46] have held that any political party who holds primaries and state conventions to select their nominee in the general election are state actors and cannot discriminate against a citizen because they are agents of the state. This holding applies to instances where political parties took steps to disenfranchise African-Americans from participating in their political activities, including denying them the right to vote in the primaries or general elections.  The holding in these cases is directly applicable to discriminatory conduct of all of the Defendants in the instant matter in that Utah political parties (agents of the State of Utah) have discriminated against individuals who are disabled by refusing to provide reasonable accommodations such as a request for an ASL interpreter provided by the URP to allow a Deaf individual to understand what is being said and which candidates are currently being voted on, or when an individual in a wheelchair asks for an accommodation to a stand-up vote at the Utah Republican nominating convention.  Due to this symbiotic relationship, State Defendants are not entitled to any immunity under the Eleventh Amendment of the United States' Constitution under the Americans with Disabilities Act.

---

[43] 530 U.S. 567, 573–74, 120 S. Ct. 2402, 147 L. Ed. 2d 502 (2000).
[44] 321 U.S. 649, 64 S. Ct. 757, 88 L. Ed. 987 (1944).
[45] 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953).
[46] 286 U.S. 73, 88–89, 52 S. Ct. 484, 487, 76 L. Ed. 984 (1932).

## CONCLUSION

The Court has subject matter jurisdiction in the instant matter and State Defendants' Federal Rule of Civil Procedure 12(b)(1) Motion should fail.   Based on the symbiotic relationship between the State Defendants, the Utah Republican Party, and the Utah County Republican Party, Plaintiff's assertions are most certainly plausible, are adequately plead pursuant to Federal Rule of Civil Procedure 8(a), and the Court should deny State Defendants Federal Rule of Civil Procedure 12(b)(6) Motion.   Based on the symbiotic relationship between the State Defendants, the Utah Republican Party, and the Utah County Republican Party, State Defendants can be found liable under federal statute, case law, and the United States' Constitution. State Defendants are not entitled to immunity under the Eleventh Amendment to the United States Constitution and where Congress waived immunity under Title II of the ADA. 28 C.F.R. § 35.178 "State Immunity."   Due to the fact that State Defendants can be found liable under the provisions of the foregoing statutes, and none of the parties acted in individual vacuums and acted together to create the discrimination complained of by Plaintiffs, the Court needs to determine the level of culpability of each of the Defendants.   Absolutely no discovery has taken place in this matter and it would be premature for the Court to dismiss any of the Defendants before discovery has been completed.   Discovery must take place so that the level of culpability of each of the Defendants can be determined by the Court.   Accordingly, the Court should deny State Defendants' Motion to Dismiss, the parties should engage in the discovery

process, and the case should be decided on the merits by the Court. Plaintiffs request that oral

argument be scheduled regarding State Defendants' Motion to Dismiss.

DATED this 14th day of September, 2018.

/s/: Jared Allebest ___
Jared Allebest
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a true and correct copy of this **MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS** on the 14th day of September, 2018 to the following parties via court electronic filing or US First Class Mail, Postage Prepaid to:

Diana F. Bradley
Kyle J. Kaiser
Sean D. Reyes
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, UT 84114
dbradley@agutah.gov

Stewart O. Peay
Counsel for the Utah Republican Party
Gateway Tower West
15 West South Temple
Suite 1200
Salt Lake City, UT 84101-1547
speay@swlaw.com

Todd D. Weiler
Counsel for the Utah Republican Party and/or Utah County Republican Party
1248 West 1900 South
Woods Cross, UT 84087

Utah Republican Party
117 E. South Temple Street
Salt Lake City, UT 84111

Utah County Republican Party
P.O. Box 1964
Orem, UT 84059

/s/: Jared Allebest
Jared Allebest
Attorney for Plaintiffs

27